1  Donald R. Warren, C.B. No. 138933
   Warren ■ Benson Law Group
2  7825 Fay Ave., Suite 200
   La Jolla, CA 92037
3  Telephone: (858) 456-1900
   Facsimile: (858) 454-5878
4  donwarren@warrenbensonlaw.com

5  Attorney for *Qui Tam* Plaintiff

6

7  # ORIGINAL

8  ## UNITED STATES DISTRICT COURT

9  ## NORTHERN DISTRICT OF CALIFORNIA

10  ## SAN FRANCISCO DIVISION

11

12  UNITED STATES, *ex rel.,*
    BONNIE LAMMERS, M.D.,

13          Plaintiffs

14          v.

15  MICHAEL HEBRARD, M.D.,
    RICHARD LAVIGNA, D.P.M,
16  FARIDEH HEIDARPOUR, ALI
    HEIDARPOUR, ADVANCED
17  PHYSICAL MEDICINE & REHAB
    GROUP, INC., ADVANCED
18  OCCUPATIONAL
    REHABILITATION, INC.,
19  ADVANCED MEDICINE AND
    REHABILITATION OF TEXAS, INC.,
20  ADVANCED MEDICINE AND
    REHABILITATION OF TEXAS, P.A.,
21

22          Defendants

CASE NO. CV 08 3411

COMPLAINT FOR VIOLATIONS OF
FALSE CLAIMS ACT 31 U.S.C. §3730;

**FILED UNDER SEAL PURSUANT TO
31 U.S.C. §§ 3730(b)(2) and (3)**

23

24  COMES NOW *QUI TAM* RELATOR-PLAINTIFF Bonnie Lammers, M.D.,

25  suing for herself and for the United States of America, and alleges as follows:

26      1.      This action alleges the defendants systematically defrauded the United

27  States through its Office of Workers Compensation Programs, federal employee

28

1

healthcare programs and the Medicare program, by making false claims, and causing false claims to be made, through 1) falsely billing for invasive EMG's as part of EMG/NCV studies, when only an NCV was performed, 2) falsely billing for unreasonable and unnecessary EMG/NCV studies, 3) falsely billing for multiple unreasonable and unnecessary Functional Capacity Evaluations, 4) falsely billing for unreasonable and unnecessary non-invasive vascular studies, 5) falsely billing for unreasonable and unnecessary use of narcotics and other pain treatments and 6) falsely billing for unreasonable and unnecessary orthotics.

## I. JURISDICTION

2.      Jurisdiction over the federal claims asserted herein is based upon federal subject matter pursuant to 31 U.S.C. § 3729 *et seq.*

3.      The Court may exercise personal jurisdiction over the defendants pursuant to 31 U.S.C. § 3732(a).

## II. VENUE

4.      Venue is proper in the Northern District of California, under 31 U.S.C. § 3732 and 28 U.S.C. §§ 1391(b) and (c) because the defendants transact business in this District and because the defendants committed acts within this district that violated 31 U.S.C. § 3729.

## III. PARTIES

5.      *Qui tam* plaintiff Bonnie Lammers, M.D., is a licensed physician and a board certified internist. Dr. Lammers provided contract physician services in the defendants' Dallas, Texas clinic, Advanced Medicine and Rehabilitation of Texas, Inc., in April and May 2008, when she became aware of the defendants' false billings and

2

1  complained internally to management.  Shortly after complaining to management, Dr.
2  Lammers' contract services were terminated.  Dr. Lammers is a resident and citizen of the
3  United States, residing in Texas.

4  6.  Defendant Michael Hebrard, M.D. is a California physician, who is also
5  applying for his Texas medical license.  Dr. Hebrard is an owner and director of
6
7  defendants Advanced Physical Medicine & Rehab Group, Inc., Advanced Occupational
8  Rehabilitation, Inc., and Advanced Medicine and Rehabilitation of Texas, Inc., and is a
9  principal in Advanced Medicine and Rehabilitation of Texas, P.A.  Dr. Hebrard has
10  participated in carrying out the fraud schemes alleged herein for at least the past 10 years.
11  At all relevant times, Dr. Hebrard directed the participation of the corporate and
12  professional association defendants in the fraud schemes alleged herein.  Dr. Hebrard
13  resides in the Northern District of California.
14

15  7.  Richard LaVigna, D.P.M. is a California doctor of podiatric medicine, who
16  is also applying for his Texas podiatry license.  Dr. LaVigna is an owner and director of
17  defendants Advanced Physical Medicine & Rehab Group, Inc., Advanced Occupational
18  Rehabilitation, Inc., and Advanced Medicine and Rehabilitation of Texas, Inc., and is a
19  principal in Advanced Medicine and Rehabilitation of Texas, P.A.  Dr. LaVigna has
20  participated in carrying out the fraud schemes alleged herein for at least the past 10 years.
21  At all relevant times, Dr. LaVigna directed the participation of the corporate and
22
23  professional association defendants in the fraud schemes alleged herein.  Dr. LaVigna
24  resides in the Northern District of California.

25  8.  Farideh Heidarpour (also known as Fariday Heidarpour) is an individual
26  residing in the Northern District of California, but also has homes in Oklahoma and
27  Texas.  Ms. Heidarpour is an expert in the coding and billing details of the Federal

28
3

worker compensation system, who helped devise the fraudulent billing practices alleged herein. Ms. Heidarpour has participated in carrying out the fraud schemes alleged herein for at least the past 10 years. Ms. Heidarpour is a financial principal in, and a director of, defendants Advanced Physical Medicine & Rehab Group, Inc., Advanced Occupational Rehabilitation, Inc., and Advanced Medicine and Rehabilitation of Texas, Inc. At all relevant times, Ms. Heidarpour directed the participation of the corporate defendants in the fraud schemes alleged herein.

9.     Ali Heidarpour is an individual residing in the Northern District of California, but has also homes in Oklahoma and Texas. Mr. Heidarpour works in conjunction with his mother, defendant Farideh Heidarpour, and with defendants Dr. Hebrard.and Dr. LaVigna to carry out the fraudulent billing schemes alleged herein.

10.     Advanced Physical Medicine & Rehab Group, Inc. ("Advanced Rehab CA") is a California corporation, headquartered in the Northern District of California. Advanced Rehab CA is owned and run by defendants Michael Hebrard, M.D., Richard LaVigna, D.P.M. and Farideh Heidarpour.

11.     Advanced Occupational Rehabilitation, Inc. ("Advanced Rehab OK") is an Oklahoma corporation. Advanced Rehab OK is owned and run by defendants Michael Hebrard, M.D., Richard LaVigna, D.P.M. and Farideh Heidarpour.

12.     Advanced Medicine and Rehabilitation of Texas, Inc. ("Advanced Rehab TX") is a Texas corporation, headquartered in Dallas, Texas. Advanced Rehab TX is owned and controlled by defendants Michael Hebrard, M.D., Richard LaVigna, D.P.M. and Farideh Heidarpour.

13.     Advanced Medicine and Rehabilitation of Texas, P.A. ("Advanced Rehab P.A.") is a Professional Association, headquartered in Dallas, Texas. Advanced Rehab

4

P.A. is owned and controlled by defendants Michael Hebrard, M.D., Richard LaVigna, D.P.M.

14.     Plaintiff is informed and believes, and thereon alleges, that Defendants, and each and all of them, at all relevant times hereinafter mentioned were the agents, employees, servants, joint venturers, parent companies, successor companies directors, fiduciaries, representatives, and/or co-conspirators of each of the remaining defendants. Defendants, in doing the things hereinafter alleged, were acting within the course and scope of such relationship and were responsible for the occurrences herein alleged.

## IV.  BACKGROUND

15.     The United States, through its Office of Workers Compensation Programs, pays enrolled providers to treat injured federal employees.  In addition, other federal employee healthcare programs are federally funded and designed to provide healthcare to federal employees and their families.  The Medicare program is a federally funded healthcare program designed to provide healthcare primarily for the aged.

16.     Not surprisingly, in order to prevent waste, fraud and abuse, these Federal healthcare programs have explicit restrictions on what may, and may not, be covered and the reimbursement rates for coverage.  One of those requirements is that the medical treatment must be medically reasonable and necessary.  Medicare providers have a legal duty to familiarize themselves with Medicare's coverage and reimbursement rules, including those stated in the Medicare Manuals.  Heckler v. Community Health Services of Crawford County, Inc., 467 U.S. 51, 64-65 (1984).  A provider's failure to inform itself of the legal requirements for participation in the program acts in reckless disregard or deliberate ignorance of those requirements, either of which is sufficient to charge it with knowledge of the falsity of the claims or certifications in question, under the False

5

1  Claims Act. *United States v. Mackby*, 261 F.3d 821, 828 (9th Cir. 2001). These duties

2  also apply to providers who provide healthcare services through the Office of Workers

3  Compensation Programs and other Federal Employee healthcare programs.

## V. DEFENDANTS' MISCONDUCT

17.    The Defendants run clinics that are simply "worker compensation mills"
and falsely bill for needless tests and non-existent reading of those tests. The Defendants
have engaged in at least six schemes to defraud the federal healthcare programs
mentioned above, especially in the treatment of injured federal workers in the programs
administered through the Office of Workers Compensation, by 1) falsely billing for
invasive EMG's as part of EMG/NCV studies, when only an NCV was performed, 2)
falsely billing for unreasonable and unnecessary EMG/NCV studies, 3) falsely billing for
multiple unreasonable and unnecessary Functional Capacity Evaluations, 4) falsely billing
for unreasonable and unnecessary non-invasive vascular studies, 5) falsely billing for
unreasonable and unnecessary use of narcotics and other pain treatments and 6) falsely
billing for unreasonable and unnecessary orthotics. Finally, the patients are told by
defendants that it is guaranteed the patients will receive money if they go through the full
regimen of testing and evaluations, and the patients are "coached" on how to respond to
physician inquiries in the evaluation of their injuries.

18.    In fact, defendant/owner Farideh Heidarpour (who is not physician) has a
pre-written diagnosis for every new patient and a list of needless tests that are always
scheduled for each patient's first day in the clinic. These tests often take place before the
patient is seen by any physician. Ms. Heidarpour also has a pre-written list of tests to be
performed on each patient at a later point in their treatment. Ms. Heidarpour even has a
script the physicians are ordered to follow, which includes the ordering of all of these

6

tests. When qui tam plaintiff Bonnie Lammers, M.D. refused to order these batteries of needless tests, she was rebuked by the defendants and later learned the tests had already been performed. The defendants went so far as to change Dr. Lammers' dictated notes on patients so that the records falsely reflected that Dr. Lammers had ordered the defendants' complete series of tests on each patient. Defendants even had a stamp of Dr. Lammers' signature that they would falsely place on patient records to make it appear that Dr. Lammers had ordered a full battery of tests and treatments. These tests and treatment plans are discussed below.

19. Billing invasive EMGs when none are performed. Electromyography ("EMG") is a test to record electrical activity in muscle tissue, and is performed by inserting needles into the muscle to record the electrical activity. EMG testing is used to distinguish nerve impairment (neuropathy) from muscle disease (myopathy). Nerve conduction velocity ("NCV") is a test to record the speed at which impulses travel through nerves and measure electrical responses. Whereas EMG is an invasive test with needles, NCV is not. For the NCV, two electrode patches are placed on the skin in a specific location. NCV is not a test to distinguish nerve impairment from muscle disease, and is of no diagnostic value in that determination. The surface electrode patches used in NCVs simply pick up the electrical signal as it travels along the nerve in that area. Despite only performing NCVs, the defendants have a standard practice of billing for EMGs and for a combination of EMGs and NCVs when only the surface NCV study is performed.

20. Billing for multiple unnecessary EMG/NCV studies. In addition to falsely billing for EMGs when none are performed, the defendants also have a standard practice of billing for EMG and NCV studies on every patient that walks in the door, as well as for

7

physician readings of each of these tests. The reading of these tests require interpretation by a specially trained physician, which defendants did not have in their employee. Based on information and belief, these tests were never actually read and used in the diagnosis and treatment of patient. Additionally, by billing for these tests on every patient, many of these tests are not medically reasonable and necessary for the particular patients. Some of the billing codes that are misused by defendants are:

95903 Motor Nerve Conduction Study

95904 Sensory Nerve Conduction Study

95861 EMG for two limbs

95900 EMG/NCV - Motor

95904 EMG/NCV - Sensory

21.     Billing for multiple unnecessary Functional Capacity Evaluations.     The Functional Capacity Evaluation ("FCE") is a test performed by an Occupational Therapist. The injured body part is tested by asking the patient to perform tasks of various difficulties that stress that body part, and the patient's ability to perform these tasks is measured and recorded.  Most worker's compensation patients in state worker's compensation systems never receive an FCE evaluation, as this test is appropriate in only some instances for some patients at the end of their treatment to determine the patient's functional ability to return to work.

22.     However, it is the defendants' standard practice to perform FCEs not only on every patient, but *multiple times* on every patient. They perform these FCEs even on patients that have a history of chest pain and diabetes, without ever clearing the patient for these tests through a cardiologist. When Dr. Lammers tried to postpone the FCEs until a patient with these symptoms could see a cardiologist, the defendants refused to

8

postpone the tests. This use of FCEs is far outside of every guideline on the topic and results in falsely billing for FCEs that are not medically reasonable and necessary.

23.     Billing for unnecessary non-invasive vascular studies. Non-Invasive Vascular Studies utilize doppler/ultrasound to measure bloodflow going through blood vessels of the extremities and record the results in a form that looks much like an EKG. The defendants perform these studies needlessly on patients with no symptoms that call for these tests to be done. Additionally, the defendants perform these studies on patients with contraindications that should prevent them from proceeding with the test. (Pregnancy, peripheral edema, signs of vascular insufficiency.) These tests are performed on every patient by poorly trained technicians and are not being interpreted by anyone, although the defendants falsely bill as though they are.  This use of non-invasive vascular studies is far outside of every medical standard and it results in falsely billing for non-invasive vascular studies that are not medically reasonable and necessary.

24.     Billing for unnecessary narcotics and pain treatments. Another scheme of the defendants is to send every patient for "pain management." Almost without exception, each patient receives three medications for pain. On information and belief, at least one or two of the medications are narcotics, such as hydrocodone. Generally, narcotics are given short-term after a surgical procedure or an injury. However, under the defendants' treatment scheme, patients are prescribed narcotics for everything including carpal tunnel syndrome and heel spurs. This abuse of narcotics for long - term conditions recklessly exposes patients to health risks including narcotic addiction. The defendants' billings to the federal programs are knowingly false because they are not for medically reasonable and necessary narcotics use.

25.     Billing for unreasonable and unnecessary orthotics. For every patient with

9

a complaint below the waist, the defendants fit the patient for orthotics. By fitting each of these patients for orthotics, the prescription for many of these orthotics are not medically reasonable and necessary for the particular patients.

26. Promising money and coaching patients to respond to physician inquiries. Finally, patients are "coached" by the defendants to exaggerate their pain and injuries, with the purpose of prolonging treatment and testing, and receiving disability awards. In this process, patients are told by defendants that the patients are "guaranteed" to receive money if they will go through the full regimen of studies and treatments.

## VI. COUNT ONE

## (For Violation of 31 U.S.C. § 3729 et seq.)

27. *Qui tam* plaintiff hereby realleges and incorporates herein by this reference paragraphs 1 through 26, inclusive, hereinabove, as though fully set forth at length.

28. Defendant has knowingly caused to be submitted, false claims for payment, as set forth above, in violation of 31 U.S.C. § 3729(a)(1). Additionally, defendant has knowingly caused to be used false records or statements to get false or fraudulent claims paid by the United States, in violation of 31 U.S.C. § 3729(a)(2). Further, defendants conspired to defraud the United States by getting a false or fraudulent claim allowed or paid, in violation of 31 U.S.C. § 3729(a)(3). As a result of such knowing submission of false claims, defendant has wrongfully caused payments to be made from, and has wrongfully received monies derived from, the United States Treasury.

**WHEREFORE**, *qui tam* plaintiff prays for relief as follows:

1. Full restitution to the United States of all money damages sustained by each, respectively;

2. For three times the dollar amount proven to have been wrongfully sold to,

10

1   paid by or withheld from the United States;

2        3.      For maximum civil penalties for all false records, statements, certifications

3   and claims submitted to the United States;

4        4.      For costs of suit, reasonable attorney's fees and the maximum relator share;

5   and

6        5.      For such other and further relief as the Court deems just and proper.

7

8

9                                       **JURY DEMAND**

10          *Qui Tam* Plaintiff hereby demands trial by jury.

11

12                                              Respectfully Submitted,
                                                **WARREN ▪ BENSON LAW GROUP**
13

14

15   Dated: July 14, 2008

16                                              Donald R. Warren
                                                Counsel for *qui tam* plaintiff Bonnie Lammers, M.D.
17

18

19

20

21

22

23

24

25

26

27

28
                                                11

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

     I am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is 7825 Fay Avenue, Suite 200, La Jolla, California 92037.

     On July 14, 2008, I served the attached:

     Complaint

[x]   by placing [ ] the original [x] true copies thereof enclosed in sealed envelopes addressed as follows:

| | |
|---|---|
| Michael Mukasey, Atty. General | Joseph P. Russoniello, U.S. Atty. |
| U.S. Department of Justice | c/o Civil Process Clerk |
| 10th and Constitution | 16-1111 U.S. Courthouse |
| Washington, D.C. 20530 | 450 Golden Gate Ave. |
| | P.O. Box 36060 |
| | San Francisco, CA 94102 |

[x]   **(BY MAIL)** I place each such sealed envelope, with postage thereon fully prepaid for certified mail in the United States mail at San Diego, California.

[ ]   **(BY FEDERAL EXPRESS)** I tendered each such envelope to a Federal Express courier for delivery to the addressee(s) noted above.

[x]   (State or Federal) I declare, under penalty of perjury, under the laws of the State of California that the above is true and correct.

     Executed on July 14, 2008, at La Jolla, California.

Donald R. Warren